943 F.2d 54
 NOTICE: Seventh Circuit Rule 53(b)(2) states unpublished orders shall not be cited or used as precedent except to support a claim of res judicata, collateral estoppel or law of the case in any federal court within the circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
Verlyn S. ROUX, Defendant-Appellant.
 No. 90-3549.
 United States Court of Appeals, Seventh Circuit.
 Submitted Aug. 20, 1991.*
Decided Sept. 4, 1991.
 
 Before CUMMINGS, POSNER and MANION, Circuit Judges.
 
 ORDER
 
 1
 On November 8, 1990, Verlyn Roux pleaded guilty to one count of possession with intent to distribute cocaine in violation of 21 U.S.C. § 841(a)(1). Roux entered a conditional plea under Federal Rule of Criminal Procedure 11(a)(2), preserving his right to appeal the district court's denial of his suppression motion. Roux now appeals the district court's refusal to suppress evidence as a result of an alleged illegal search and seizure in violation of the Fourth Amendment.
 
 
 2
 Roux does not contend that law enforcement agents lacked reasonable suspicion to make an investigatory stop. He complains, however, that his encounter with the police escalated into a full-blown arrest which was not supported by probable cause. Because he contends that he was seized in violation of the Fourth Amendment, he claims that his subsequent consent to a search of his luggage was not given voluntarily and any evidence seized from the search should be suppressed.
 
 I. FACTS
 
 3
 On March 7, 1990, approximately eleven state and federal law enforcement agents awaited the arrival of Roux's flight at Baer Airport in Fort Wayne, Indiana, returning to Indiana from Los Angeles, California. The law enforcement agents had received information that Roux, traveling under the name Kevin Wilson, was a drug courier.[1]
 
 
 4
 While other agents monitored Roux's movements, Officer Allen Royce of the Allen County Police Department went to the baggage unloading area with a drug detection dog to check all the luggage on Roux's flight for the possibility of narcotics. The dog positively reacted to Roux's bag which had an identification tag bearing the name Kevin Wilson.
 
 
 5
 While waiting for the baggage to be unloaded, Roux met Arthur Ware who had come to pick up Roux. Ware claimed Roux's bags, and both men headed out of the terminal towards Ware's car. Unbeknownst to Roux and Ware, undercover agents occupied the cars directly in front and behind Ware's vehicle. Upon seeing the defendant and Ware approach the car, two officers exited a car parked ten feet behind Ware's vehicle. Both officers advanced with their guns drawn. The two officers in the other car also exited their car and approached Ware's car. Both Ware and Roux were told to put their hands against the car and were given a pat-down search. After the search, the officers holstered their guns. One or two of the officers took out their handcuffs, but were told by FBI Agent McGauley to put the handcuffs away.[2] In all, there were at least eight to ten law enforcement agents at the scene of the "stop".
 
 
 6
 Agent McGauley testified that he identified himself as a federal agent conducting a narcotics investigation. He informed Roux that he was suspected of being a drug courier, and asked Roux to accompany the officers to another area to answer some questions. He also testified that he told Roux that he was free to leave. This testimony was hotly disputed by Roux. Roux, Ware, and the eight to ten law enforcement officials walked about 100 yards to a building which housed the Baer Airport Police Station. Ware and Roux were each taken to separate rooms. Roux was taken to a room which was approximately 12 feet by 12 feet in dimension. Two officers were in the room at all times. In addition, the door to the room was kept open. The other officers were milling around the lobby outside the door, and, apparently their guns were in plain view. Roux was informed that the dog had positively identified his baggage as containing narcotics. He was asked to sign a consent form so that the police officers could search the bag. He was told that he could refuse and informed that the police would get a search warrant if he refused. Roux testified that he was told that he would have to wait there until the warrant was procured. Agent McGauley denied Roux's allegation, testifying that he told Roux he was free to leave. About an hour and a half after the agents initiated contact with Roux, he signed a consent form allowing the search of his luggage. The agents found cocaine in the baggage. Roux was then formally arrested and read his Miranda rights.
 
 II. ANALYSIS
 
 7
 The district court found that Roux was told that he was free to leave. Therefore, the court concluded that any contact between Roux and the law enforcement agents was consensual. As such, the court held that Roux's Fourth Amendment rights were not implicated. Because Roux was not illegally seized, the consent to search the bags was valid. The court found, in the alternative, that the police had probable cause to arrest Roux. Therefore, Roux's consent to the search could not have been the result of an illegal seizure.
 
 
 8
 We need not decide whether the district court correctly concluded that Roux was not seized. We agree with the district court that the agents had probable cause to arrest Roux based on the positive result of the narcotic detection dog's sniff of Roux's bags. This conclusion is supported by the Supreme Court's decision in Florida v. Royer, 460 U.S. 491, 103 S.Ct. 1319 (1983). In Royer, the Court questioned the government's failure to use a dog to determine whether narcotics were present in a detained piece of luggage. The court noted: "A negative result would have freed Royer in short order; a positive result would have resulted in his justifiable arrest on probable cause." Id. at 506, 103 S.Ct. at 1329. Because Roux could be lawfully seized, his consent to the search cannot be invalidated as the fruit of an illegal seizure.[3]
 
 
 9
 Because the law enforcement agents had probable cause to arrest Roux, no Fourth Amendment violation occurred. The district court correctly denied Roux's motion to suppress the evidence found pursuant to the consensual search of Roux's luggage.
 
 
 10
 AFFIRMED.
 
 
 
 *
 After preliminary examination of the briefs, the court notified the parties that it had tentatively concluded that oral argument would not be helpful to the court in this case. The notice provided that any party might file a "Statement as to Need of Oral Argument." See Fed.R.App.P. 34(a); Cir.R. 34(f). No such statement having been filed, the appeal has been submitted on the briefs
 
 
 [1]
 Indiana officials were contacted by narcotics agents in Knoxville, Tennessee. Following up on this information, the Indiana agents discovered that Roux purchased his round trip ticket from Indiana to California in Knoxville. Agents checked the home address given by Roux (Wilson) to discover that no such address existed. Further, the agents, who were aware of the possibility that Roux was a courier before he left Indiana, noted that Roux was dropped off at Baer Airport on February 28, 1990, by two individuals who currently had state narcotics charges pending against them
 
 
 [2]
 Roux testified that he was handcuffed. None of the agents' testimony corroborated this contention, and the district court found that Roux was not handcuffed
 
 
 [3]
 The failure to inform Roux of his Miranda rights until after the discovery of the cocaine does not vitiate the consent. In United States v. Glenna, 878 F.2d 967, 971 (7th Cir.1989), this court held that giving consent to search is not an incriminating statement protected by the Fifth Amendment. Therefore, there can be no violation for a failure to read the Miranda warnings to an arrested suspect before requesting consent to conduct a search